FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
2018 JAN 29 PM 12:49
OFFICE OF THE CLERK

United States District Court Nebraska

Valentine
V.
Villwok

Case # CV16 131/174/236

Motion for Summary Judgement

We move for summary judgement denovo showing that there is no issue of law or fact, and plaintiff is entited to judgement as a matter of law. ~~More~~ Moreover, the Nov 18, 2016 order of judge Wheelock subsumes all issues in this case and becomes the law of this case. The 11-18-16 order was not appealed, remains of record unmotified unreversed and nobody can change it.

1.)

Judge Wheelock ruled that custody was duress and that plaintiff's not voluntary consensual in the case. We entitled to it

1-27-18

6112 Jayne St
Omaha, NE

NEBRASKA )
DOUGLAS } ss.
COUNTY )

### AFFIDAVIT

I Veronica Valentine, being first duly sworn, do hereby depose and state denovo that:

at no time in these premises consensually acquiesced **consented** to any "strip search" and at all times in these premises was under duress.

2.)

All strip search in the United States are illegal "_per-se_" constituting "_duress_" and no woman in the United States can consent to a "_strip search_"! We affiant should have been granted summary judgement long time ago as the record is replete with all _indica_ that plaintiff constitutional rights were violated when she was illegally, illicitly unconstitutionally "_strip seached_"!

Subscribed & Sworn To
Before me this ___ day
of 1-2

Veronica Valentine
6112 Jaynes St
Omaha Nebr 68104

3.)

_____ Nortery _____

Certification of service
I do hereby certify that
A true a correct copy of the forgoing motion for summary judgement on
Timothy Hime 1701 Farnam st Omah. Nebr 68103 by us mail

4)

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA
NOV 1 8 2016
JOHN M. FRIEND
CLERK DISTRICT COURT

| | | |
|---|---|---|
| STATE OF NEBRASKA, | ) | CR 16-928 |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | ORDER REGARDING MOTION |
| | ) | TO SUPPRESS AND MOTION IN |
| VERONICA J. VALENTINE, | ) | *LIMINE* |
| Defendant. | ) | |

This matter is before the Court on a motion to suppress statements and a motion in *limine* filed by Defendant, Veronica J. Valentine ("Ms. Valentine") a self-represented litigant. A hearing on the motion was held before this Court on November 14, 2016 where the State was represented by Mr. Sean Lavery, Esq., and Mr. Eric Wells, Esq., Deputy Douglas County Attorneys. Ms. Veronica J. Valentine ("Ms. Valentine") appeared self-represented with stand by counsel, Jacquelyn Morrison, Assistant Douglas County Public Defender. Evidence was adduced, and after reviewing the evidence the Court finds Ms. Valentine's motion to suppress and motion in *limine* should both be sustained.

## FACTS

On July 16, 2015, Omaha Police Detective Chris Brown along with several other Omaha Police Officers executed a valid search warrant on 1915 Emmet Street, Omaha, Nebraska. Detective Brown used a ram to break open the door, and was the last person in the home. Detective Brown was wearing tactical gear when he broke down the door to gain entry into the residence. Present for the search warrant were several people inside the home as well as Ms. Valentine. While the search warrant was being executed all of the persons within the residence were placed in the same room. The execution of the search warrant took over thirty minutes.

1



After the search of the residence was completed two female police officers took Ms. Valentine into a bathroom and conducted a strip search/cavity search of Ms. Valentine's person. After the female officers finished conducting the "strip search/cavity search" of Ms. Valentine's person Detective Brown took Ms. Valentine into a vacant bedroom that was referred to as Tanisha's bedroom. Detective Brown explained to Ms. Valentine why he was there and why he was executing the search warrant. Detective Brown told Ms. Valentine that he was executing the search warrant at 1915 Emmet Street, Omaha, Nebraska because she sold drugs and she sold drugs to a confidential informant who was working for the police. In response to Detective Brown's explanation as to why he was executing the search warrant Ms. Valentine replied, "I don't sell crack, I just use it. I don't want to answer any questions. I don't want to answer any questions." The conversation ended.

Ms. Valentine was subsequently charged by information with Count 1, Possession of a Controlled Substance to wit: Cocaine a Class IV felony.

At the conclusion of the hearing the State of Nebraska conceded and stipulated that the Ms. Valentine was in custody when Detective Brown spoke with Ms. Valentine. At issue is whether Ms. Valentine's statement "I don't sell crack, I just use it" is a volunteered statement or a statement made as a result of interrogation.

## LEGAL ANALYSIS AND RULING

Ms. Valentine argues that her statement to Detective Brown should be suppressed because her statement was made during a custodial interrogation without the required waiver of her rights per *Miranda*. Ms. Valentine argues that the statement "I don't sell crack, I just use it. I don't want to answer any questions" was a result of words or actions on the part of the Omaha Police

2

Department that the police should have known were reasonably likely to elicit an incriminatory response from Ms. Valentine.

First, Ms. Valentine's statements to Detective Brown were made while she was in custody. This is not at issue because the State of Nebraska conceded that she was in custody. Second, the statement "I don't sell crack, I just use it" was not volunteered but rather the product of interrogation.

In *State v. Rodriguez*, the Supreme Court of Nebraska stated:

> *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prohibits the use of statements derived during custodial interrogation unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination. See, *State v. Ball,* 271 Neb. 140, 710 N.W.2d 592 (2006); *State v. Mata,* 266 Neb. 668, 668 N.W.2d 448 (2003). **Under the *Miranda* rule, a "custodial interrogation" takes place when questioning is initiated by law enforcement officers after one has been taken into custody or is otherwise deprived of one's freedom of action in any significant way.** *Ball, supra.* <u>This court has determined that interrogation occurs when a person is placed under a compulsion to speak.</u> *State v. Lamb,* 213 Neb. 498, 330 N.W.2d 462 (1983). " <u>'[T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.</u>' " *State v. Buckman,* 259 Neb. 924, 935, 613 N.W.2d 463, 474 (2000), quoting *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). **Statements made in a conversation initiated by the accused or spontaneously volunteered by the accused are not the result of interrogation and are admissible. Further, we have excluded from the definition of interrogation a course of inquiry related and responsive to a volunteered remark.**

See *State v. Rodriguez*, 272 Neb. 930, 943-44, 726 N.W.2d 157, 170-71 (2007) (Emphasis added.)

3

### A. Custody

During Ms. Valentine's conversation with Detective Brown, she was deprived of her "freedom of action in a significant way." *Id.* Custody under *Miranda* "does not require an arrest, but rather requires that a reasonable individual would feel restraints on their freedom that would be associated with arrest. *State v. Rogers*, 277 Neb. 37, 54, 760 N.W.2d 35, 52 (2009). During Ms. Valentine's conversation with Detective Brown, Ms. Valentine was not free from leaving. Any reasonable person would feel their freedom of movement restrained at that moment. The evidence proved that Ms. Valentine was subjected to a "cavity search" by two female police officers in a bathroom at the home. After the two female officers completed the "cavity search" of Ms. Valentine's body Detective Brown ordered Ms. Valentine into a vacant bedroom where they were both alone. The evidence proved that Ms. Valentine was in custody. The State of Nebraska conceded that she was in custody.

### B. Interrogation

The second issue presented in this case is whether the explanation as to why Detective Brown executed the search warrant on Ms. Valentine constituted interrogation within the purview of *Miranda* and *Innis*.

Before any custodial interrogation by police can take place, the rule of requires that the defendant be apprised of his right against self-incrimination and of his right to the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Nebraska Supreme Court held that interrogation occurs either through express questioning or its "functional equivalent," which is defined as police words or actions known by police to be reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) cited in *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983).

4

The following case law illustrates the circumstances when a criminal defendant volunteers a statement. The Supreme Court of Nebraska has determined that interrogation occurs when the subject is placed under a compulsion to speak. *In re Interest of Durand*, 206 Neb. 415, 293 N.W.2d 383 (1980). Statements made in a conversation initiated by the accused or spontaneously volunteered by the accused are not the result of interrogation and are admissible. *State v. Pittman*, 210 Neb. 117, 313 N.W.2d 252 (1981); *State v. Red Feather*, 205 Neb. 734, 289 N.W.2d 768 (1980). In *Leslie v. Wainwright*, 511 F.Supp. 753 (M.D.Fla.1981), the court, in a footnote, stated that a police officer's excited utterance to defendant, "What did you say?" did not constitute improper interrogation. In *Com. v. Shepherd*, 269 Pa.Super. 291, 409 A.2d 894, 896 (1979), the court said: "Where there is no expectation of an admission and the police conduct is not an attempt to obtain an admission, there is no interrogation." In *State v. Link*, 289 N.W.2d 102 (Minn.1979), it was held that questions which had "nothing to do with investigative criminal activity" were not proscribed by *Miranda*. In *United States v. Pauldino*, 487 F.2d 127 (10th Cir.1973), *cert. denied* 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974), a defendant was arrested for auto theft. He volunteered that he had a bill of sale. When asked by police if he had it, defendant replied he did not. The police question was held not to be a violation of *Miranda*, as it was a course of inquiry related and responsive to a volunteered remark. In *Johnson v. State*, 269 Ind. 370, 377, 380 N.E.2d 1236, 1240 (1978), the court stated: "Not every statement uttered by a police officer which is punctuated with a question mark will necessarily constitute an interrogation.... Rather, it is necessary to view the statement in the context in which it was made." In the *Johnson* case the officer's remark "What happened?" was held to be more in the nature of a greeting intended for its calming effect than for obtaining an admission, and thus the responsive statement was a

5

spontaneous, voluntary, and unsolicited remark. See, also, *United States v. Voice,* 627 F.2d 138 (8th Cir.1980).

The facts of this case differ from the facts of the aforementioned cited cases. Detective Brown initiated contact with Ms. Valentine. Ms. Valentine did not initiate contact with Detective Brown or any other police officer. Detective Brown ordered Ms. Valentine into a vacant bedroom. Detective Brown ordered Ms. Valentine into the empty bedroom to explain to her why he executed the search warrant. It is important to keep in mind that this explanation took place right after Ms. Valentine endured a "cavity search" by two female officers in a bathroom. Detective Brown testified that he "explained" to Ms. Valentine why he executed the search warrant. Detective Brown explained to Ms. Valentine that she sold drugs and that a confidential informant who was working for the police purchased drugs from her. Detective Brown was not asking routine questions. Ms. Valentine responded by saying "I don't sell crack, I just use it. I don't want to answer any questions." Detective Brown did not further inquire or subject Ms. Valentine to any further interrogation prohibited by the *Miranda* decision.

The Court finds that Ms. Valentine was subjected by two female police officers and Detective Brown to actions and words that the police should have known were reasonably likely to elicit an incriminating response from her. Detective Brown should have known that his explanation to Ms. Valentine as to why he executed the search warrant was reasonably likely to elicit an incriminating response from her. The record is replete with evidence that Ms. Valentine had just endured a "cavity search" of her body by two female officers in an enclosed bathroom in an effort to search her person for contraband. Detective Brown initiated the conversation with Ms. Valentine. This case boils down to whether in the context of Detective Brown's explanation as to why executed the search warrant he should have known that Ms. Valentine would be suddenly

6

moved to make a self-incriminating response. Detective Brown's explanation as to why he executed the search warrant at 1915 Emmet Street, Omaha, Nebraska included accusatory statements toward Ms. Valentine of her allegedly selling drugs out of the home to several people including a confidential informant. Given the totality of the circumstances surrounding the execution of the search warrant and the "cavity search" of Ms. Valentine, Detective Brown should have known that Ms. Valentine would be moved to make a self-incriminating response. Based on the record it can be fairly concluded that Ms. Valentine was subjected to the "functional equivalent" of questioning. Therefore, her statement, "I don't sell crack, I just use it. I don't want to answer any questions" is NOT admissible.

**IT IS THEREFORE ORDERED** that Ms. Valentine's statement to Detective Brown, "I don't sell crack, I just use it. I don't want to answer any questions" is not admissible.

**IT IS FURTHER ORDERED** that Ms. Valentine's statement, I don't sell crack, I just use it. I don't want to answer any questions", to Detective Brown is suppressed.

**IT IS FURTHER ORDERED** that by agreement of the parties the motion in limine is sustained. Unless Ms. Valentine "opens" the door no evidence of drug dealing is permitted in the trial. No evidence regarding the contents of the affidavit and application for the issuance of the search warrant is permitted.

**IT IS SO ORDERED.**

Dated this 18th day of November, 2016

BY THE COURT

Horacio J. Wheelock
District Court Judge

7

Cc:

Mr. Sean Lavery, Esq.
Mr. Eric Wells, Esq.
Ms. Jacquelyn Morrison, Esq.,
Ms. Veronica Valentine (Self Represented Litigant)

8

RECEIVED
LAW DEPARTMENT
2018 JAN 29 PM 1:28